**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | Case No. 15-17390 |
| | ) | Hon.  Jack B. Schmetterer |
| **GEORGE ANTHONY GARTH,** | ) | Room 682 |
| | ) | Hearing Date:  August 13, 2015 |
| Debtor. | ) | Hearing Time: 10:00 a.m. |

## NOTICE OF MOTION

To:     See Attached Service List

PLEASE TAKE NOTICE THAT on August 13, 2015 at 10:00 a.m., we shall appear before the Honorable Jack B. Schmetterer, or any other Judge sitting in his stead in Courtroom No. 682, 219 South Dearborn, Chicago, Illinois, at which time we shall present **CREDITOR'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY**, a copy of which was previously served upon you, and shall pray for the entry of an order in conformity with said pleading, at which time and place you may appear if you so see fit.

**LCS Construction Co.**, Creditor


By:     /s/ Ariel Weissberg
            One of its attorneys


Ariel Weissberg, Esq. (Attorney No. 03125591)
Rakesh Khanna, Esq. (Attorney No. 06243244)
Weissberg and Associates, Ltd.
401 S. LaSalle St., Suite 403
Chicago, Illinois  60605
T.  312-663-0004
F.  312-663-1514

**CERTIFICATE OF SERVICE**

      I, Ariel Weissberg, certify that on August 4, 2015, I caused **CREDITOR'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY** to be filed electronically. Notice of this filing was sent by the court's ECF electronic transmission to the following parties:

Patrick Layng, Esq.
UST Region 11
219 S Dearborn St., Rm. 873
Chicago, Illinois  60604

Ira Bodenstein, Esq.
Office of the U.S. Trustee
219 South Dearborn Street, Room 873
Chicago, Illinois  60604

David M. Seigel, Esq.
David M. Seigel & Associates
790 Chaddick Drive, Suite 1125
Wheeling, Illinois 60090
*(Attorney for Debtor George A. Garth)*

Mark Meyers, Esq.
Blitt and Gaines, P.C.
661 Glenn Ave
Wheeling, Illinois  60090
Email: mmeyers@blittandgaines.com
*Attorney for Ford Motor Credit Company*

Notice of this filing was sent by first class U.S. mail, ,postage prepaid to the following parties on August 4, 2015:

George Anthony Garth
15308 Lincoln
Harvey, Illinois  60426

George Anthony Garth Masonry Inc.
c/o George Anthony Garth, Registered Agent
11509 South Elizabeth Street
Chicago, Illinois 60643

George Anthony Garth Masonry Inc.
c/o George Anthony Garth, Registered Agent
15308 Lincoln
Harvey, Illinois  60426

2

A.G. Construction Services, Inc.
c/o Anthony Marcel Garth, Registered Agent
15308 Lincoln
Harvey, Illinois 60426

Notice of this filing was also sent by either facsimile or electronic transmission (as noted) on August 4, 2015 to the following parties:

John J. Eannace, Esq.
11950 South Harlem, Unit 201-S
Palos Heights, IL 60463
By Email: jjeatty@aol.com
*(Attorney for Anthony Blum, Michael Jarigese and Castle Construction Corp.)*

Adrian P. Zeno, Esq.
401 S. LaSalle Street, Suite 801P
Chicago, Illinois 0605
By Email: Adrian_zeno@zenolawoffice.com
*(Attorney for George Anthony Garth)*

Scott P. Clair, Esq.
180 West Washington St., Suite 400
Chicago, Illinois 60602
By Email: sclair@scottclairlaw.com
*(Attorney for A.G. Construction Services, Inc.)*

Ernest B. Fenton, Esq.
Ernest B. Fenton, P.C.
935 175th Street
Homewood, Illinois 60430
By Email: attorneyfenton@yahoo.com
*(Attorney for A.G. Construction Services, Inc.)*

Stahl, Cowen, Crowley LLC
55 West Monroe, Suite 1200
Chicago, Illinois 60603
By Fax: 312-423-8162
*(Attorney for First American Title Insurance Company)*

          /s/ Ariel Weissberg
           Ariel Weissberg

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | Case No. 15-17390 |
| | ) | Hon. Jack B. Schmetterer |
| GEORGE ANTHONY GARTH, | ) | Room 682 |
| | ) | Hearing Date: August 13, 2015 |
| Debtor. | ) | Hearing Time: 10:00 a.m. |

**CREDITOR'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

NOW COMES Creditor, LCS Construction Co. ("LCS"), by its attorneys, Ariel Weissberg and the law firm of Weissberg and Associates, Ltd., and as *Creditor's Motion for Relief From the Automatic Stay*, LCS moves to modify the automatic stay to allow LCS to pursue in the Circuit Court of Cook County, Illinois certain pending pre-petition motions, and a turnover of funds held by First American Title Insurance Co. pursuant to LCS' pre-petition citation lien. In support of this Motion, LCS states as follows:

1. On May 2, 2008, LCS filed a Complaint against the Debtor George Anthony Garth ("Garth") and his company, George Anthony Garth Masonry, Inc. ("GAG"), claiming among other things, that Garth and GAG had tortuously interfered with business relations, captioned as, *LCS Construction Co. v. Anthony Garth et al*, as Case No. 2008-L-004810 ("State Court Action") in the Circuit Court of Cook County, Illinois, Law Division, County Department ("Circuit Court"). On April 28, 2011, after Garth had refused to comply with multiple discovery orders, the Circuit Court entered judgment in the State Court Action in favor of LCS and against Garth and GAG, jointly and severally, in the amount $141,513.54 ("Judgment Order"). *See* Judgment Order, attached hereto as Exhibit "1."

2. On September 28, 2011, LCS initiated supplementary proceedings against GAG

4

and Garth to collect on the Judgment Order, by issuing and serving, Citations to Discover Assets against both Garth and GAG ("Citations"). *See* Citations against Garth and GAG, attached hereto as Exhibit "2." Due to Garth's repeated instances of non-compliance with the Citations, the Circuit Court held Garth in contempt and issued body attachments on four separate occasions. During that time, Garth reported in the supplementary proceedings that he and GAG had no assets or income. Nevertheless, on or about November, 2012, in direct contravention of Garth's statements and court submissions pursuant to the Citations, LCS was able to locate checks which First American Title Insurance Co. ("FAT") had been issuing to GAG for masonry work that GAG had performed on the Pullman Wheelworks Construction Project (the "Pullman Project").

3. Thereafter, on February 26, 2013, LCS served a third party citation on FAT to freeze any undisbursed funds owed to GAG. *See* FAT Citation, attached hereto as Exhibit "3." Initially, FAT froze $52,845.70 in undisbursed funds and has since received a draw request for an addition $11,200.00. *See* Email[1] dated July 30, 2015, attached hereto as Exhibit "4." On April 1, 2013, LCS filed a Motion for Turnover of the funds held by FAT in the State Court Action.

4. Thereafter, on June 7, 2013, AG Construction Services, Inc. ("AG") filed a Motion to Deny Turnover. In its Motion, AG claimed that 1) it was owned by Garth's son (a 22 year old with no prior business experience); 2) Garth had assigned the Pullman Project masonry subcontract to AG at some unspecified time; and 3) AG had performed all work on the Pullman Project. After extensive briefing and a two day evidentiary hearing, the Circuit Court issued a 29 page written opinion on December 16, 2014. *See* Order and Opinion dated December 16, 2014, attached hereto as Exhibit "5" ("Order and Opinion"). In the Order and Opinion, the Circuit

---

[1] Ron Damashek is counsel for FAT in the underlying collection proceeding.

5

Court a) found that AG was owned by Garth[2]; b) held there was no assignment of the Pullman Project masonry subcontract to AG; and, c) held there was no evidence (other than the unreliable testimony of Garth and his son) which would establish that AG performed any work on the Pullman Project. Accordingly, the Circuit Court denied AG's Motion to Deny Turnover. In addition, the Court stated:

> It is apparent to this Court that Garth has not been cooperative in these proceedings, and upon reviewing the facts on record, this Court admonishes him for his conduct. If he does not demonstrate himself to be more amicable in future proceedings, the Court may use its discretion to apply sanctions.
>
> *See* Order and Opinion at p. 26.

Finally, with regard to the funds held by FAT, the Court stated:

> The Court grants LCS leave to pursue turnover of the remaining funds held by FAT due to GAG under the Pullman Contract. There are no obstacles to this turnover under Illinois law and therefore the assets should be produced to satisfy LCS' judgment without delay.
>
> *See* Order and Opinion at p. 28.

5. On January 6, 2015, the Parties appeared in the State Court Action before the Circuit Court on a third party citation. Based upon the language in the Order and Opinion, LCS requested an order authorizing the immediate turnover of the funds held by FAT.[3]

6. On March 3, 2015, the Circuit Court granted LCS' Motion for Turnover and ordered the subject funds held by FAT to be turned over to LCS by March 6, 2015 ("Turnover Order"). AG's counsel indicated that it intended to file a Motion to Vacate the Turnover Order.

---

[2] Garth incorporated AG in 2008. *See* AG Articles of Incorporation, attached hereto as Exhibit "6." His son is not identified in any capacity on the AG's Articles of Incorporation. Notably, the registered agent of AG was changed from Garth to Garth's son shortly after LCS located the checks which FAT had issued to GAG.
[3] FAT's attorney wanted specific language ordering his client to turnover the funds it was holding.

6

The Circuit Court advised that it could not prevent AG from doing so, but ordered AG to file the Motion to Vacate on or before March 5, 2015. *See* Order dated March 3, 2015, attached hereto as Exhibit "7." Ultimately, on March 5, 2015, AG filed in the State Court Action a Motion to Vacate the Turnover Order and a separate Motion for an Extension of Time to File a Motion to Reconsider the Circuit Court's Order and Opinion of December 16, 2014 Order.[4] The Circuit Court entered a briefing schedule with the Motions scheduled for hearing on May 18, 2015. *See* Order dated March 24, 2015, attached hereto as Exhibit "8."

7.     On May 16, 2015, two days prior to the hearing on LCS' Motion for Turnover, Garth filed his voluntary petition to initiate the instant Chapter 7 Bankruptcy Case. Notably, despite the fact that Garth had testified under oath in the State Court Action that the funds held by FAT are the property of AG, and despite the Circuit Court's ruling that these funds are property of GAG, Garth has listed the funds held by FAT as owned individually by Garth as personal property in his Schedules.

8.     On May 18, 2015, the Circuit Court placed the post-judgment proceeding on the Stay Calendar as to Garth only. *See* Order dated May 18, 2015, attached hereto as Exhibit "9."

9.     On August 4, 2015, LCS filed its Proof of Claim. *See* Proof of Claim, attached hereto as Exhibit "10." The Proof of Claim asserts a secured claim against all personal property of Garth based upon the existence of LCS' perfected pre-petition citation lien. *See* Exhibit "10."

10.    Through this Motion, LCS is asking this Court to modify the automatic stay pursuant to Section 362 of the Bankruptcy Code for the limited purpose of allowing LCS to pursue in the State Court Action a ruling on AG's pending Motion to Vacate and Motion for an Extension of Time, and if LCS prevails on these motions, to pursue and obtain the turnover of

---

[4] LCS has since filed a Petition for ISCR 137 Sanctions against AG and its counsel. In its Petition, LCS asserts that AG's latest Motions are devoid of evidentiary support and merely rehash issues and arguments that the Court has previously disposed of.

7

the funds held by FAT.  Presently, the judge presiding over the State Court Action (Judge Alexander White hearing the post-judgment proceedings) has stated that he will not issue a ruling on AG's Motion to Vacate and Motion for an Extension of Time or otherwise authorize the release of the FAT funds without first obtaining an order of this Court modifying the automatic stay.

11. The automatic stay of the Bankruptcy Code is one of the most basic protections provided by bankruptcy law, serving to give the debtor a breathing spell from financial pressures and to prevent an unfair distribution of estate assets among creditors. *In re Grogg*, 295 B.R. 297, 301 (Bankr. C.D. Ill. 2003). The automatic stay provision, § 362(a), has been described as one of the most fundamental debtor protections provided by the bankruptcy laws. *Fernstrom* citing *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection,* 474 U.S. 494, 503, 106 S.Ct. 755, 760 (1986) (footnote and internal quotations omitted). See also *Matthews v. Rosene,* 739 F.2d 249, 251 (7th Cir. 1984). The purpose of the automatic stay is to preserve what remains of the debtor's insolvent estate and to provide a systematic equitable liquidation procedure for all creditors, secured as well as unsecured, thereby preventing a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts. *Matter of Holtkamp,* 669 F.2d 505, 508 (7th Cir. 1982) citing H.R. Rep.No.595, 95th Cong., 1st Sess. 340 (1977), reprinted in (1978) U.S. Code Cong. & Ad. News 6296-97.

12. Section 362(a) bars "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title...." *Matter of Holtkamp,* 669 F.2d 505, 508 (7th Cir.1982) citing 11 U.S.C.A. § 362 (West 2008). Though § 362(a) provides for a nearly comprehensive stay of proceedings against the

8

debtor, §362(d) requires the bankruptcy judge "to grant relief from the stay ... for cause." *Id.* "Cause" as used in §362(d) has no clear definition and is determined on a case-by case basis. *Id.* citing *In re Tucson Estates,* 912 F.2d 1162, 1166 (9th Cir.1990) and *In re Makarewicz,* 121 B.R. 262, 264 (Bankr.S.D.Fla.1990).

13. While it is in the discretion of the court to grant the relief sought, in addressing a request for relief from the automatic stay, the court should consider judicial economy and the lack of prejudice to the estate if relief from the automatic stay is granted. *In re Continental Airlines, Inc.*, 152 B.R. 420, 424 (D. Del. 1993). In balancing the competing interests of the debtor and the movant, courts consider three factors: 1) the prejudice that would be suffered should the stay be lifted; 2) the balance of the hardships facing the parties; and, 3) the probability of success on the merits if the stay is lifted. *Id.* citing *In re Fernstrom Storage & Van Co.*, 938 F.2d 731, 734-35, (7th Cir. 1991) ("*Fernstrom"*); *Edmondson v. America West Airlines, Inc.*, 148 B.R. 920, 922-23 (Bankr. D. Az. 1993) ("The Bankruptcy Court must make the following determinations in deciding if cause exists to modify the stay: 1) whether the litigation causes debtor great prejudice…; 2) whether a balancing of the respective hardships tips in favor of the debtor or creditor, resulting from denial or granting of the relief…; and 3) whether public policy supports the type or kind of action the Movant is bringing against the debtor.") See also, *In re matter of Udell,* 18 F. 3d 403 (7th Cir. 1994) (Held: bankruptcy court could lift stay to permit employer to seek injunction only after considering prejudice to debtor or bankruptcy estate of allowing non-bankruptcy litigation to proceed, relative hardship to debtor and party seeking relief, and probability that employer would prevail on merits in litigation.)

The three factor test for determining whether "cause" exists considers:

a) If any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit,

9

      b)    the hardship to the [non-bankrupt party] by maintenance of the stay considerably outweighs the hardship of the debtor, and

      c)    the creditor has a probability of prevailing on the merits.

*Fernstrom* at 735, citing *In re Pro Football Weekly,* 60 B.R. 824, 826 (N.D. Ill. 1986). Determining whether cause exists to modify the stay to permit a lawsuit to proceed in another court requires a balancing of the costs and benefits of maintaining the stay. *In re Comdisco, Inc.,* 271 B.R. 273, 276 (Bankr. N.D.Ill. 2002).

      14.    In *In re Grogg,* 295 B.R. 297, 305 (Bankr. C.D. Ill. 2003), the court, in expounding on the *Fernstrom* criteria, considered a variety of factors including: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms. *In re Grogg* at 306, citing *In re Comdisco, Inc.,* 271 B.R. 273, (Bankr.N.D.Ill.2002); *In re Sonnax Industries, Inc.,* 907 F.2d 1280, 1286 (2nd Cir. 1990); *In re Schick,* 232 B.R. 589 (Bankr.S.D.N.Y.1999). Courts applying those factors recognize that not all factors are relevant in a particular case and that not every factor is of equal importance. *Id.*

15. Here, all of the integral factors set forth in *Fernstrom* and *Grogg* for granting LCS' request to modify the automatic stay exist. The issues surrounding ownership of the funds held by FAT have been extensively examined by the Circuit Court, and the Circuit Court has in turn ruled that they belong to GAG and should be turned over to LCS. With regard to AG's Motion to Vacate and Motion for an Extension of Time to File a Motion to Reconsider, both Motions have been fully briefed by the Court. The Circuit Court is very familiar with the facts and circumstances surrounding the pending Motions. Furthermore, it is clear from the record in the State Court Action, especially AG's Motion to Vacate, that Garth has no individual claim to the funds held by FAT. Thus, Garth has no basis to assert that he will be prejudiced if the underlying post-judgment proceedings in the State Court Action are allowed to proceed to adjudicate AG's Motion to Vacate and Motion for an Extension of Time to File a Motion to Reconsider, and if those Motions are denied, to allow the turnover of the funds held by FAT to LCS in partial satisfaction of its citation lien. Similarly, because the funds held by FAT are property of GAG and are subject to a pre-petition perfected secured citation lien pursuant to LCS' citation, none of the other creditors are prejudiced if the funds held by FAT are paid to LCS if the Circuit Court ruled in LCS' favor on AG's Motion to Vacate and Motion for an Extension of Time to File a Motion to Reconsider.

16. Even assuming *arguendo* that the funds held by FAT are personal property of Garth, LCS also has a perfected pre-petition secured claim on all of the pre-petition personal property of Garth because of LCS' citation lien. Thus, in relation to Garth's creditors, LCS has an unquestionable first priority right to the funds held by FAT.

17. LCS has suffered and continues to suffer significant prejudice due to the automatic stay. As set forth above, Garth has engaged in evasive conduct throughout the post

11

judgment proceedings and elected to file the instant Petition two (2) days prior to the hearing on AG's pending Motions. In reality, this bankruptcy case is another attempt by Garth to frustrate LCS' attempt to collect on its judgment.

18. Finally, concerning LCS' likelihood of success on the merits, LCS urges this Court to review the Order and Opinion of December 16, 2014. Every single position taken by Garth and AG was rejected and the Circuit Court was clear in its rulings in favor of LCS concerning the ownership of the funds held by FAT. In light of the facts, LCS strongly doubts that will change after the automatic stay is modified.

WHEREFORE, Creditor, LCS Construction Co., respectfully requests that this Court enter an Order modifying the automatic stay to allow all parties-in-interest to participate to conclusion in AG Construction Services, Inc.'s Motion to Vacate and Motion for an Extension of Time to File a Motion to Reconsider, and if LCS Construction Co. prevails on these Motions, allowing LCS Construction Co. to be paid the funds held by First American Title Insurance Co.; and for such other and further relief as this Court deems just and proper.

Dated: August 4, 2015                                **LCS CONSTRUCTION CO.,** Creditor


By:     /s/ Ariel Weissberg_____
   One of its attorneys


Ariel Weissberg, Esq. (Attorney No. 03125591)
Weissberg and Associates, Ltd.
401 S. LaSalle St., Suite 403
Chicago, ILLINOIS 60605
T. 312-663-0004
F. 312-663-1514

12